IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3076-FL

| | | |
|---|---|---|
| JOHN FRANK MILLER, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | ORDER |
| TARA WILSON, | ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on defendant's motion to dismiss (DE 36) pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded in opposition and in this posture the issues raised are ripe for ruling.

### STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing complaint March 22, 2022, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Pursuant to the operative amended complaint, filed November 14, 2023, plaintiff alleges defendant violated his First Amendment rights by retaliating against him for filing grievances and the original complaint filed in this case. Defendant is Tara Wilson, a correctional official at the Nash Correctional Institution. As relief, plaintiff seeks compensatory and punitive damages, and various forms of injunctive relief.

Defendant now moves to dismiss plaintiff's claims, arguing that plaintiff failed to exhaust administrative remedies prior to filing this action. In support, defendant relies upon 1) declaration

of counsel; 2) memorandum from Kimberly Grande, the executive director of the Inmate Grievance Review Board, to the North Attorney General's office; 3) plaintiff's administrative grievance records; 4) declaration of Ashley Jones, a correctional officer at the Scotland Correctional Institution; and 5) plaintiff's offender information screen showing his assignments to various correctional facilities. Where defendant submitted evidence beyond the pleadings, the court notified plaintiff that it may construe the motion as one for summary judgment and provided instructions for responding to the motion pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff filed numerous responses in opposition to the motion.

## STATEMENT OF FACTS

The facts alleged in plaintiff's amended complaint may be summarized as follows. In approximately May 2023, while plaintiff was housed at the Nash Correctional Institution, he filed a grievance alleging defendant mistreated him.[1] (See Am. Compl. (DE 14) at 3).[2] Several months later, correctional officials charged plaintiff with two infractions, the first for possession of synthetic marijuana, and the second for possession of a weapon. (See id.). As a result of these infractions, the Facility Classification Committee met with plaintiff to review his custody status.[3] (Id.). Defendant is the head of the classification committee. (Id.).

As soon as plaintiff entered the classification meeting, defendant stated she would recommend plaintiff for 45 days in "restricted housing" and demotion to close custody. (Id. at 3–

---

[1] Plaintiff does not provide further information about this grievance. (See Am. Compl. (DE 14) at 3).

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3] An inmate's custody status refers to the requisite level of supervision and privileges afforded the inmate. (See Am. Compl. (DE 14) at 3). For example, "close custody" requires significant restrictions on the inmate's movement outside his cell. (See id.).

2

4). According to plaintiff, defendant made the decision before he was afforded the opportunity to be heard. (Id. at 4). Plaintiff requested that the committee reconsider this decision in light of his clean disciplinary record for approximately 12 years prior to these infractions. (See id.). Defendant, however, responded that this fact did not matter. (Id.). The remaining members of the committee were close friends of defendant, and they agree with "anything she says" including the sanctions imposed against plaintiff. (See id.).

## COURT'S DISCUSSION

A.  Standard of Review

Where defendant's motion to dismiss relies on matters outside the pleadings, the court construes the motion as one for summary judgment. See Fed. R. Civ. P. 12(d). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[4]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome

---

[4] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

Defendant asserts that plaintiff failed to exhaust administrative remedies before filing this action. The Prison Litigation Reform Act ("PLRA") states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

4

prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory, and the court therefore may not excuse failure to exhaust, even to take special circumstances into account. Ross v. Blake, 578 U.S. 632, 639 (2016); Woodford v. Ngo, 548 U.S. 81, 83–85 (2006). A prisoner must exhaust his administrative remedies even if the relief requested is not available under the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). Administrative grievances must contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]." Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017); Moore v. Bennette, 517 F.3d 717, 729 (4th Cir. 2008).

The North Carolina Department of Adult Correction ("DAC") has a three-step administrative remedy procedure ("ARP"), which inmates must complete to exhaust administrative remedies. See DAC, Policy & Procedure Manual, Subchapter G, § 0300 et seq., available at https://public.powerdms.com/NCDAC/tree/documents/2145373; see also Moore, 517 F.3d at 721 (describing policy).[5] Pursuant to the ARP, the DAC first encourages inmates to attempt informal communication with responsible authorities at the facility in which the problem arose. ARP § .0301(a). If informal resolution is unsuccessful, the ARP provides that any inmate in DPS custody may submit a written grievance on Form DC-410. Id. § .0310(a). If the inmate is not satisfied with the decision reached at the step-one level of the grievance process, he may request relief from the facility head. Id. § .0310(b)(1). If the inmate is not satisfied with the decision reached by the facility head, he may appeal his grievance to the Secretary of Public Safety

---

[5] The ARP is a publicly available governmental record, the authentication of which is not questioned by the parties. Accordingly, the court may take judicial notice of the policy when resolving the instant motion. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); see also Fauconier v. Clarke, 652 F. App'x 217, 220 n.4 (4th Cir. 2016).

5

through the inmate grievance examiner. Id. § .0310(c)(1). The decision by the inmate grievance examiner or a modification by the Secretary of Public Safety shall constitute the final step of the ARP. Id. § .0310(c)(6).

Here, plaintiff alleges defendant retaliated against him for filing grievances and the original complaint in this action. (See Am. Compl. (DE 14) at 3–5; Nov. 14, 2023, order (DE 13) at 4–5). Plaintiff, however, did not exhaust administrative remedies for this claim where he did not file grievance alleging defendant retaliated against him and then proceed through all steps of the ARP. (See Decl. of Counsel (DE 37-1) ¶ 4 & Ex. C (DE 37-4)); Wilcox, 877 F.3d at 167 (requiring that administrative grievances contain sufficient detail to "alert[] the prison to the nature of the wrong for which redress is sought" and "give prison officials a fair opportunity to address the alleged [mistreatment]"). Indeed, plaintiff effectively admits that he did not exhaust a pertinent grievance prior to commencing this action or filing the amended complaint. (Pl's Resp. (DE 39) at 1 ("I did not file another grievance because this was an example of an ongoing issue with the defendant retaliating against me.")). And the only exhausted grievance in which plaintiff alleged mistreated by defendant in any form was filed before the alleged retaliation occurred in the summer of 2023. (Compare Def's Ex. C (DE 37-4) with Am. Compl. (DE 14) at 3–4).

As plaintiff emphasizes, inmates are not required to exhaust administrative remedies if the correctional institution's procedure is "unavailable." See Ross, 578 U.S. at 642–44. An administrative remedy procedure is unavailable if the "procedure's provided avenues for recourse are not meaningfully 'capable of use to obtain some relief for the actions complained of.'" Griffin v. Bryant, 56 F.4th 328, 335 (4th Cir. 2022) (quoting Ross, 578 U.S. at 642–43). The Supreme Court has identified three non-exclusive circumstances where an administrative remedy procedure

is unavailable: 1) where the procedure "operates as a simple dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; 2) when it is "so opaque that it becomes, practically speaking, incapable of use"; and 3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 642–44; Griffin, 56 F.4th at 335.

Plaintiff does not establish the ARP was unavailable under the foregoing standard.[6] The fact that the ARP does not provide a forum to seek monetary damages does not excuse failure to exhaust. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit"); Booth, 532 U.S. at 741. And while plaintiff offers grievance that was denied because it was filed more than 90 days after the alleged retaliation occurred, the ARP is not rendered unavailable simply because standard procedural rules bar the grievance. See Ross, 578 U.S. at 642–44; Woodford, 548 U.S. at 83, 90 (explaining the PLRA requires "proper exhaustion" and thus "untimely or otherwise procedurally defective administrative grievance[s] or appeal[s,]" as determined by the correctional institution's procedural rules, do not satisfy the PLRA's exhaustion requirement."); (July 16, 2024, grievance (DE 42-2)). Finally, and contrary to plaintiff's contention (DE 56 at 1), there are no equitable or non-statutory exceptions that permit waiver of the exhaustion requirement. See Ross, 578 U.S. at 638–642.[7]

**CONCLUSION**

Based on the foregoing, defendant's motion to dismiss (DE 36) is GRANTED.

---

[6]   As noted above, upon filing of the instant motion to dismiss, the court provided plaintiff notice required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) (DE 38).

[7]   The court has reviewed and considered fully plaintiff's voluminous filings in this case, and endeavored to

7

Plaintiff's claims are dismissed without prejudice. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of February, 2025.

                                                 _____
                                                 LOUISE W. FLANAGAN
                                                 United States District Judge

---

address all pertinent arguments regarding the exhaustion defense. The remainder of these filings are irrelevant to the exhaustion issue and thus not addressed specifically herein. To the extent plaintiff offers additional legal argument regarding exhaustion, these assertions are without merit for the reasons discussed herein.